# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ELZIE CULWELL, JR,**

      **Plaintiff,**

v.                                      **Case No: 6:21-cv-111-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for period of disability and disability insurance benefits. In a decision dated May 20, 2020, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from May 18, 2018, the alleged disability onset date, through the date of the ALJ's decision. R. 118–119. Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

**I.    Issues on Appeal**

Claimant raises the following arguments on appeal:

1)  The ALJ did not properly consider Claimant's bipolar disorder. *See* Doc. 32 at 26.

2)  The ALJ did not properly discount Dr. Kaplan's medical opinion. *See* Doc. 32 at 18.

3)  The ALJ did not properly discount Nurse Fairchild's medical opinion. *See* Doc. 32 at 18.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Docs. 20; 26.

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III. Discussion

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[2] The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

---

[2] Here, in assessing the Claimant's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently push, pull, and/or reach overhead with both upper extremities, can frequently balance, stoop, kneel, crouch, and crawl, can frequently climb stairs and ramps, can never climb ladders, ropes and scaffolds, and

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March 22, 2017,[3] 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[4] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between

---

> can occasionally be exposed to unprotected heights and moving machinery parts. He is able to understand and remember simple instructions, make simple work related decisions, carry-out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with coworkers and the public.

R. 106–107.

[3] Claimant filed his claim on June 21, 2018. R. 100.

[4] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

a medical source's opinion and other evidence within the record.[5]  In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors").  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

Further, where a claimant is diagnosed with bipolar disorder, the Eleventh Circuit has noted that "the ALJ must consider the episodic nature of bipolar disorder."  *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)).

### A.  Claimant's Bipolar Disorder

Claimant argues that the ALJ failed to properly consider Claimant's bipolar disorder.  The Court rejects this argument.

---

[5] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

The ALJ stated the following with respect to Claimant's bipolar disorder:

> There were some behavioral health evaluations in the record. In the fall of 2017, he reported depression, easy irritation, poor sleep, and that he avoided anxiety provoking situations. (12F/37). He also reported visual and tactile hallucinations (seeing shadows and feeling bugs on skin). (*Id*.). During the exam, he had depressed and anxious mood, flat affect, and low energy, but normal cognition, normal concentration, appropriate eye contact, intact judgment, and normal insight. (*Id*.). At behavioral health follow-ups in November 2019, he reported hallucinations, but there was no indication that he was responding to stimuli and he had normal behavior other than anxious and dysphoric mood. (18F/2, 4). At January 2020 behavioral health follow-up, he was processing not being able to do much physically due to his heart attack, stent, and angina. (20F/1). He had dysphoric mood, but he was oriented with broad/appropriate affect, normal cognition, appropriate eye contact, intact judgment, normal insight. (20F/1). It is also worth noting that his full-scale IQ score was 96, which was in the average range, at a psychological evaluation in the fall of 2017. (7F/53).
>
> He has received most of his mental treatment from Circles of Care. He has been receiving treatment from Circles of Care since 2017 and he had a "much improved stable mood" in early 2018. (7F/22). He reported that he lost his job in May 2018 due to problems with concentrating and with anxiety. (7F/26). He had moderately depressed mood and constricted affect, but he was cooperative with good eye contact, organized and goal directed thought processes, fair insight and judgment, and no observations of responding to internal stimuli. (7F/26-27). His medication was increased and changed. (7F/29).
>
> He reported improved mood and sleep in July 2018, but higher anxiety levels and he had ruminative thinking while sitting around most of the day. (7F/42). He did not have significantly abnormal mental status exam findings and his mood was much less depressed with a fuller range of affect. (*Id*.). During subsequent sessions in 2018, he had some abnormal mood and affect findings, but he generally was cooperative with organized and goal oriented thought process, good attention and concentration, intact memory, and good insight and judgment. (e.g., 7F/47; 10F/38, 43; 15F/31).

R. 111–112.

Thus, the ALJ noted that Claimant experiences "good days"[6] and "bad days"[7] that are characteristic of a person who has bipolar disorder. *See, e.g., Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267–68 (11th Cir. 2019) ("We agree with our sister Circuits that people with chronic diseases can experience good and bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work."); *see also, e.g., Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021). The Court notes that in reaching his conclusion, the ALJ did not rely only on citations to "good days"; the content of the ALJ's decision shows that the ALJ comprehensively considered Claimant's mental health symptoms. Indeed, the ALJ's citations show that he considered all of Claimant's mental health symptoms, including the more serious ones such as "visual and tactile hallucinations (seeing shadows and feeling bugs on skin)." R. 111; *see Simon*, 7 F.4th at 1106 (11th Cir. 2021) (finding that the ALJ erred in "only list[ing] [Claimant's] relatively minor symptoms" while not addressing Claimant's more serious symptoms).

Accordingly, the Court finds that the ALJ addressed the episodic nature of Claimant's bipolar disorder. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

### B. Dr. Kaplan's Opinion

Claimant argues that the ALJ erred in his consideration of Dr. Kaplan's medical opinion. The Court rejects this argument.

---

[6] For instance, the ALJ noted that Claimant "had some abnormal mood and affect findings, but he generally was cooperative with organized and goal oriented thought process, good attention and concentration, intact memory, and good insight and judgment. (e.g., 7F/47; 10F/38, 43; 15F/31)." R. 111–112.

[7] For instance, the ALJ noted at one examination that Claimant "had depressed and anxious mood, flat affect, and low energy[.]" R. 111.

As an initial matter, it appears that Claimant points to portions of Dr. Kaplan's findings that arguably support Dr. Kaplan's limitations. The Court is not persuaded by this argument. "Under a substantial evidence standard of review, [Claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). And again, it is not this Court's function to reweigh the medical evidence. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

The ALJ stated the following with respect to Dr. Kaplan's opinion:

> Scott Kaplan, Psy.D., conducted a memory assessment arranged by the claimant's representative and opined in April 2020 that the claimant meets listings 12.04 and 12.11. (22F). He opined that the claimant is likely to experience mild impairment understanding one and two step tasks, moderate to marked impairment understanding complex tasks, and marked impairment getting along in social settings and adapting. He also opined that the claimant would experience significant decompensation in a work setting, and specifically, he would have difficulty relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, and maintaining attention and concentration. He noted that the claimant would not behave in an emotionally stable manner nor would he relate predictably in social situations and consequently, would be unable to demonstrate reliability. I find Dr. Kaplan's limitations and restrictions are unpersuasive, as they are not supported by his exam findings or consistent with the objective clinical findings. Dr. Kaplan did not explain the limitations and restrictions he opined. While some of the findings during the exam, including the claimant's IQ score of 73 in the borderline range of intellectual functioning support some parts of the opinion, other observations and findings during the exam do not support the extent of the opinion, such as the claimant being oriented with clear and logical speech processes, no evidence of circumstantiality and/or pressured speech, logical thought processes, and no evidence of any hallucinations or delusions. (22F/1-2). Dr. Kaplan examined the claimant on one occasion and the evaluation was not based on his review of the claimant's medical records, but rather solely on the claimant's reported history. The claimant's reported history indicated that the claimant had no problems recalling and remembering facts and events dating back 20 years to current facts and events. It is notable that Dr. Kaplan indicated that the claimant had memory problems, but relied upon the claimant's memory to reach his conclusions. In addition, this opinion is inconsistent with other evidence in the record, including the claimant's relatively unremarkable mental exam findings. (e.g., 7F/47; 10F/38; 15F/10, 18,

28; 17F/6, 10; 21F/1; 23F/3). The claimant even has had intact recall and recent memory at a number of exams. (e.g., 7F/47; 10F/38, 43; 15F/28).

R. 115–116.

The ALJ found that Dr. Kaplan's limitations were unpersuasive as they were "not supported by his exam findings or consistent with the objective clinical findings." R. 115. For instance, the ALJ found that:

> While some of the findings during the exam, including the claimant's IQ score of 73 in the borderline range of intellectual functioning support some parts of the opinion, other observations and findings during the exam do not support the extent of the opinion, such as the claimant being oriented with clear and logical speech processes, no evidence of circumstantiality and/or pressured speech, logical thought processes, and no evidence of any hallucinations or delusions. (22F/1-2).

*Id.* This also evinces the ALJ's comprehensive view of Dr. Kaplan's opinion; the ALJ expressly noted that some evidence supported parts of Dr. Kaplan's opinion but found that other contradictory evidence outweighed the supporting evidence. *Id.* The ALJ also found that Dr. Kaplan's opinion was inconsistent with other medical evidence in the record, "including the claimant's relatively unremarkable mental exam findings. (e.g., 7F/47; 10F/38; 15F/10, 18, 28; 17F/6, 10; 21F/1; 23F/3)." R. 115–116. Regarding the memory limitations, the ALJ noted that "The claimant even has had intact recall and recent memory at a number of exams. (e.g., 7F/47; 10F/38, 43; 15F/28)." R. 116.

Thus, the ALJ properly considered the required factors of supportability and consistency.[8] Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

---

[8] Claimant argues that the ALJ erred in not explaining his consideration of the treatment relationship, specialization, and "other factors." The Court finds this argument unpersuasive. Under the new regulations, an ALJ is not required to explain consideration of these factors. *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019).

**C. Nurse Fairchild's Opinion**

Claimant argues that the ALJ failed to properly consider Nurse Fairchild's medical opinion. The Court rejects this argument.

The ALJ stated the following with respect to Nurse Fairchild's opinion:

Carol Fairchild, MSN, ARNP, opined in June 2019 that the claimant was at least "seriously limited" in many areas, including the ability to work in coordination with or proximity to others, remember work like procedures, make simple work-related decisions, respond to changes, understand and remember very short and simple instructions, maintain attention for a 2 hour segment, sustain an ordinary routine without special supervision, interact with the public, maintain socially appropriate behavior, and perform at a consistent pace without an unreasonable number and length of rest periods. (14F). She also opined that the claimant would be absent from work more than 4 days per month. (*Id*.). I find these limitations and restrictions are unpersuasive, as they are not supported by supported by the objective clinical findings at the time of her record review despite her explanation that the claimant was unstable with chronic depression and anxiety causing his inability to sustain concentration, poor memory, and avoidance of others. (*e.g.*, 7F/26-27, 42, 47; 10F/38, 43; 15F/22, 25, 28, 31). In addition, other evidence is inconsistent with this opinion. For example, the records also show that the claimant has been able to see friends, able to effectively interact with medical staff, perform gardening, and pursue his painting hobby. (*e.g.*, HT; 2E; 13F/4; 15F/10). In addition, Ms. Fairchild's subsequent treatment notes do not document significantly abnormal mental exam findings. (*e.g.*, 15F/10, 14; 17F/6, 10; 21F/1; 23F/3). I also note that Ms. Fairchild indicated that the claimant has no substance or alcohol abuse, which is not consistent with the medical evidence. (*e.g.*, HT; 13F/2; 14F; 15F).

R. 113–114.

The ALJ found that Nurse Fairchild's limitations were unpersuasive as they were unsupported by the objective clinical findings and were inconsistent with other medical evidence of record. For instance, the ALJ cites many records supporting his finding that Nurse Fairchild's limitations were not supported by her findings.[9] *See id.* Beyond that, the ALJ noted that Nurse

---

[9] Claimant's argument appears to be that the records cited by the ALJ are plausibly consistent with Nurse Fairchild's opinion. But whether these records are arguably consistent with Nurse Fairchild's opinion is largely unhelpful in determining whether the ALJ's contrary finding is nonetheless supported by substantial evidence. When the record supports multiple readings and the ALJ's chosen reading is a permissible one, the Court must affirm; this is true even if the ALJ's

Fairchild's "subsequent treatment notes do not document significantly abnormal mental exam findings. (e.g., 15F/10, 14; 17F/6, 10; 21F/1; 23F/3)." *Id.* The ALJ also noted that Nurse Fairchild's limitations were inconsistent with other medical evidence of record, such as evidence that Claimant "has been able to see friends, able to effectively interact with medical staff, perform gardening, and pursue his painting hobby. (*e.g.*, HT; 2E; 13F/4; 15F/10)." Finally, the ALJ noted that while Nurse Fairchild "indicated that the claimant has no substance or alcohol abuse," this was "not consistent with the medical evidence. (*e.g.*, HT; 13F/2; 14F; 15F)."

Thus, the ALJ properly considered the required factors of supportability and consistency.[10] Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

## IV.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the Commissioner's decision is due to be affirmed.

---

chosen reading is preponderated against by a contrary reading. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–1159 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

[10] Claimant also argues that the ALJ erred in not explaining his consideration of the treatment relationship, specialization, and "other factors" vis-à-vis Nurse Fairchild. The Court finds this argument unpersuasive. Under the new regulations, an ALJ is not required to explain consideration of these factors. *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019).

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case

**ORDERED** in Orlando, Florida on April 7, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE